Filed 2/15/22  P. v. Sanchez CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JACINTO PEREZ SANCHEZ,<br><br>    Defendant and Appellant. | B312061<br><br>(Los Angeles County<br>Super. Ct. No. VA070524-01) |

    APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Debra Cole-Hall, Judge.  Affirmed.

    Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

    Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jacinto Perez Sanchez, convicted in 2004 with Aviu Garcia of first degree murder with a felony-murder special-circumstance finding, appeals the denial of his petition for resentencing pursuant to Penal Code section 1170.95[1] after the superior court found, beyond a reasonable doubt, that Sanchez could still be convicted of felony murder under amended section 189, subdivision (e)(3), as a major participant in the underlying attempted robbery who had acted with reckless indifference to human life. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Drug Deal, Attempted Robbery and Shooting*

Sanchez, Garcia and Janet Cota were charged in an information with murder (§ 187, subd. (a)), attempted robbery (§§ 211, 664) and assault with a firearm (§ 245, subd. (a)(2)) with a special-circumstance allegation the murder had occurred during the commission of the attempted robbery (§ 190.2, subd. (a)(17)). The information additionally alleged all three defendants had personally used a handgun when committing felony murder and attempted robbery (§ 12022.53, subd. (b)) and Sanchez had personally and intentionally discharged a handgun proximately causing Adrian Briones's death (§ 12022.53, subds. (c) & (d)). It was further alleged that Garcia had used a handgun (§ 12022.5, subd. (a)) and personally inflicted great bodily injury on a second victim, Roberto Farias. Cota pleaded guilty to attempted robbery

_____

[1] Statutory references are to this code.

2

and admitted a firearm enhancement in a negotiated agreement and testified at Sanchez and Garcia's trial.

The prosecutor's theory of the case, as outlined in the information and described in his opening statement, was that Sanchez fired the shot that killed Briones. By closing argument, however, the prosecutor argued the evidence showed Garcia was the shooter. Our opinion affirming the judgments of conviction, reviewed by the superior court when considering Sanchez's petition, described the evidence presented at the men's joint trial. (*People v. Sanchez* (July 18, 2005, B173340) [nonpub. opn.].)

Cota needed to make money while her husband was in jail. Cota's husband put her in touch with Farias, whom her husband had met while incarcerated. Farias said Briones, Farias's nephew, would pay a finder's fee for bringing him drug buyers. Farias and Cota set up a drug deal with Sanchez and Garcia, who agreed to purchase between 100 to 150 pounds of marijuana for $300 to $330 per pound.

The day of the deal Sanchez and Garcia met Cota at a gas station, and the three drove to Farias's home. Farias, who thought Cota was coming alone, spoke to Briones on the phone and told him to come quickly because the buyers were there. At Briones's urging, Farias asked to see the money. Sanchez and Garcia showed him a bag in the back of the car that appeared to contain money wrapped in plastic. Sanchez said there was close to $50,000 in the bag.

Before Briones arrived, Cota noticed a gun in the waistband of Sanchez's pants. She asked Sanchez to give it to her so the deal could go forward. Sanchez gave Cota the gun, which she put in her pocket. Although Briones was reluctant to go through with the deal because Cota had not come alone, he

3

changed his mind when Sanchez showed him the bag of money and asked to see "the merchandise." Briones invited Sanchez to go with him to the trailer behind Farias's duplex where the marijuana was stored.

Sanchez accompanied Briones to the trailer, bringing the bag of money with him. They started weighing packages of marijuana. Garcia backed the car into the driveway and down near the trailer. Briones handed Garcia several packages, and Garcia loaded them into the trunk of the car. By this time, Farias and Cota had walked down the driveway and were standing near Garcia. Briones told Garcia to stop loading any more packages into the car until he counted the money. Sanchez placed the money bag on the table. Briones picked up some bills and started counting.

According to Farias, who was standing outside the trailer door, Sanchez pulled out a gun, pointed it at Briones and said, "You're fucked. I'm taking everything." Briones dropped the money and reached for the gun. He grabbed Sanchez's arm, and the two men struggled. Briones had his back to the trailer door during the struggle. Farias saw Garcia run by him, raise his gun and point it at Briones. Farias tried to grab Garcia's hands. Farias felt an impact on his hand and went down to the ground. He later realized he had been shot. Once on the ground Farias shielded his face with his hands. He was shot two more times, once in the arm and once in the stomach. He did not know who shot Briones.

Cota's narrative differed from Farias's. She testified she had been back near the trailer when the men were loading packages into the trunk. She, Garcia and Farias then walked to the front yard of Farias's home. When they heard a shot, they

ran back to the trailer.[2] Farias, who arrived first, got up on the step and looked inside the trailer. He then turned around and jumped on top of Garcia. Garcia, who was holding a gun, fired a shot. (Cota said she only heard a total of two shots.) Sanchez ran out of the trailer; and he, Garcia and Cota ran to the car.

Cota did not see a gun in Sanchez's hand as he left the trailer, but she saw him holding a gun when they were in the car. (Cota still had the gun Sanchez had given her earlier. Garcia and Sanchez told her to take that gun home with her.) Sanchez said everything had gone badly and he had left the money behind.

Briones died as a result of a gunshot wound. According to a deputy medical examiner, Briones was shot in the back from a distance of more than two or three feet. The bullet traveled through his body at an upward angle. A supervisor from the firearms identification section of the sheriff's department testified three .38 caliber shell casings found at the scene were fired from the same gun.[3]

The jury convicted Sanchez and Garcia of first degree murder, attempted robbery and assault with a firearm, found true the felony-murder special-circumstance allegation and, as to Garcia, also found true the firearm-use and great bodily injury enhancements with respect to the aggravated assault charge. The jury found not true the allegations Sanchez had personally and intentionally discharged a firearm during the attempted robbery and felony murder. The court sentenced both men to life

---

[2] Faustino Farias, Roberto Farias's brother, testified he saw Cota back by the trailer before any shots were fired.

[3] Two of the shell casings were found outside the trailer and one inside it.

without parole for murder plus determinate terms for the additional charges and enhancements.

We affirmed the judgments on appeal, rejecting Garcia's arguments there was insufficient evidence to support his convictions and Sanchez's claims of instructional error relating to Cota's testimony as an accomplice and his argument the trial court had abused its discretion in denying his motion for acquittal as to the section 12022.53, subdivisions (c) and (d), enhancement allegations that he had personally and intentionally discharged a firearm proximately causing the death of Briones. (*People v. Sanchez, supra*, B173340.)

2. *Sanchez's Petition for Resentencing*

On March 12, 2019 Sanchez, representing himself, filed a petition for resentencing under section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Sanchez checked boxes on the printed form petition to establish his eligibility for resentencing relief, including the boxes stating he had been convicted under a felony-murder theory and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). The superior court appointed counsel to represent Sanchez.[4]

Following briefing by the People and Sanchez's appointed counsel, the superior court found Sanchez had made a prima facie showing of his entitlement to relief and issued an order to show cause, setting the matter for an evidentiary hearing. On

_____

[4] Judge Robert J. Higa presided at Garcia and Sanchez's 2004 trial. Judge Higa retired prior to the filing of Sanchez's petition. The matter was assigned to Judge Debra Cole-Hall.

6

April 19, 2021, after considering the trial record and this court's opinion affirming Sanchez's felony-murder conviction on appeal and hearing argument from counsel, the court denied the petition, finding beyond a reasonable doubt Sanchez had been a major participant in the commission of the attempted murder and had acted with reckless indifference to human life and, therefore, could still be found guilty of murder on a valid theory of felony murder.

Sanchez filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)[5] It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to

---

[5]     As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

the definition of the crime.  (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1170.95, subd. (b)(3)),[6] and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  However, "the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a

---

[6]    Prior to enactment of Senate Bill No. 775 the requirement to appoint counsel was set forth in subdivision (c) of section 1170.95.

credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)[7] The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

We review the superior court's factual findings following the evidentiary hearing for substantial evidence. (*People v. Ramirez* (2021) 71 Cal.App.5th 970, 985; *People v. Hernandez* (2021) 60 Cal.App.5th 94, 113.)

   2. *Section 189, Subdivision (e)(3), and the Narrowed Felony-murder Rule*

At the time of Sanchez and Garcia's trial section 189 permitted a conviction for felony murder by imputing malice to a participant in an inherently dangerous felony, including robbery, that resulted in a homicide. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1184.) As amended by Senate Bill 1437,

---

[7] As amended by Senate Bill No. 775, section 1170.95, subdivision (d)(3), now clarifies, "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder except under the revised felony-murder rule as set forth in section 189, subdivision (e), which requires proof of specific facts relating to the defendant's individual culpability:  The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision (§ 189, subd. (e)(3)).

The overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for new section 189, subdivision (e)(3), were identified by the Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and reiterated most recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).  As to whether the defendant was a major participant in one of the specified felonies, the *Banks* Court listed the following factors:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder,

and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court has enumerated the following factors: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins, supra*, 9 Cal.5th at p. 677; accord, *Clark, supra*, 63 Cal.4th at pp. 618-622.) ""[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient."" (*Scoggins*, at p. 677; accord, *Banks*, *supra*, 61 Cal.4th at p. 803.)

As the *Scoggins* Court explained, "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*Scoggins, supra*, 9 Cal.5th at p. 676; accord, *Banks*, *supra*, 61 Cal.4th at p. 808 ["[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient"; reckless indifference to human life requires "knowingly creating a 'grave risk of death'"].) "Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that

death as the outcome of his actions.'" (*Scoggins*, at pp. 676- 677, quoting *Clark, supra*, 63 Cal.4th at p. 617.)

    3. *Substantial Evidence Supports the Trial Court's Finding That Sanchez Is Ineligible for Resentencing Relief Under Section 1170.95*

    There can be no question substantial evidence supports the superior court's finding that Sanchez was a major participant in the attempted robbery. Although Cota arranged the drug transaction, it is a reasonable inference that the men, both carrying loaded firearms, came to Farias's home with the intention of robbing the drug dealers. Sanchez then initiated the robbery as Briones was counting the money Sanchez had given him, pointing his gun at Briones (after giving one gun to Cota immediately before their encounter with Farias) and provocatively declaring, "You're fucked. I'm taking everything."

    Although the proof Sanchez acted with reckless indifference to human life during the attempted robbery was not as overwhelming, that finding, too, is supported by substantial evidence. (See *People v. Dalton* (2019) 7 Cal.5th 166, 244 [When considering a challenge to the sufficiency of the evidence to support a conviction, the reviewing court determines "'"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence"'"]; see also *Clark, supra*, 63 Cal.4th at p. 626 ["'[w]here the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion

the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal'"].)

Even though the evidence indicated it was Garcia, not Sanchez, who fired the fatal shot (as reflected by the jury's finding not true as to Sanchez the section 12022.53, subdivisions (c) and (d), firearm use enhancements), Sanchez was armed and physically present at the scene of what he necessarily knew was a crime with a high risk of escalating violence—the robbery of drug dealers during a drug deal involving a large quantity of marijuana, a large amount of money and at least three loaded guns. As discussed, after Sanchez announced the robbery and Briones attempted to disarm Sanchez, Garcia came to Sanchez's aid, first shooting Farias and then Briones. There was no evidence Sanchez did anything to restrain Garcia or lessen his lethal reaction to the robbery gone bad. Moreover, after Garcia shot Briones, rather than attempt to assist Briones or call for help, Sanchez fled with Garcia and Cota—all factors suggesting Sanchez acted with reckless indifference to human life. (See *Scoggins, supra*, 9 Cal.5th at p. 677; *Clark, supra*, 63 Cal.4th at pp. 618-622; see generally *People v. Law* (2020) 48 Cal.App.5th 811, 825, review granted July 8, 2020, S262490 ["[W]e are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and was present for the shooting did not meet the standard in section 190.2, subdivision (d). The defendants who have been able to get their special circumstance findings vacated under *Banks* and *Clark* are those who were not wielding guns themselves and also not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only"].)

13

It is the superior court, not the reviewing court, that must be persuaded beyond a reasonable doubt the petitioner can still be convicted of murder after Senate Bill 1437's amendments to sections 188 and 189.  The evidence in the record here reasonably justified the superior court's conclusion.  That it also might have supported a finding that Sanchez, although actively involved in the attempted robbery, did not act with reckless indifference to human life does not warrant reversal of the order denying his petition for resentencing.  (See *People v. Ramirez, supra*, 71 Cal.App.5th at p. 985; see also *People v. Zamudio* (2008) 43 Cal.4th 327, 357-358.)

## DISPOSITION

The postjudgment order denying Sanchez's petition for resentencing under section 1170.95 is affirmed.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.